## STATE OF OREGON,
*Appellant,*

*v.*

## JACK ALLEN JUHL,
*Respondent.*

(94971CR, 941270CR, 942591CR;
CA A94298 (Control), A94299, A94300)
(Cases Consolidated)

946 P2d 683

Ann Kelley, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Phil Studenberg argued the cause and filed the brief for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LEESON, J.

**LEESON, J.**

The state appeals from a pretrial order of dismissal, ORS 138.060(1), assigning error to the trial court's order directing the state to disclose the identity of a confidential reliable informant (CRI). We review for abuse of discretion, *State v. Martinez*, 97 Or App 170, 175, 776 P2d 3 (1989), and reverse and remand.

On April 13, 1994, Klamath Falls Police Officer Rote filed an affidavit for a search warrant based on information provided to him by CRI #3941. The information includes, in part, the following: The CRI went to the home of Robert Tate Webster and saw at least a quarter of a pound of methamphetamine and at least one pound of marijuana in the shop behind Webster's home. According to the CRI, Webster told him that soon Webster was going to receive a pound of "ice," *i.e.*, crystallized methamphetamine. Webster told the CRI that defendant sells drugs for him, including one to two pounds of marijuana per week. Webster also said that defendant owed him $10,000 for drugs that he "fronted" to defendant with the expectation of being paid later. According to the CRI,

> "Webster and [defendant] have confided a great deal about the sale of methamphetamine and marijuana * * *. Both have admitted to [me] the details of [Webster's] and [defendant's] methamphetamine and marijuana distribution organization."

The CRI also saw defendant at Webster's home receiving drugs to sell.

Rote corroborated the information provided by the CRI and filed an affidavit for a search warrant. He received a warrant to search defendant's home for evidence of conspiracy to manufacture and deliver controlled substances. On May 9, 1994, defendant was indicted for criminal conspiracy to manufacture and deliver controlled substances, possession of controlled substances, first-degree theft and unlawful possession of a short-barreled rifle. In June 1994, Webster, acting on behalf of the police, engaged in a drug deal with defendant. On June 30, 1994, defendant was indicted for criminal

conspiracy to deliver controlled substances, delivery of controlled substances and possession of controlled substances. On November 28, 1994, defendant also was indicted for tampering with a witness, after Webster alleged that defendant threatened him in an effort to prevent Webster from testifying against him.

On September 21, 1994, in the case involving the first indictment, defendant moved to produce the CRI's identity. The court denied that motion. Defendant moved for reconsideration. On May 15, 1996, the court granted defendant's motion to identify the CRI and ordered the state to do so. On that same date, defendant moved to produce the CRI's identity in the other two indictments against defendant. The state moved for reconsideration of the court's order requiring disclosure of the CRI's identity in the case involving the first indictment. The parties argued the issue on May 31, 1996, and the court took the matter under advisement. The court heard additional argument on July 9, 1996, affirmed its previous ruling and ordered the state to disclose the identity of the CRI. On July 24, 1996, after the state declined to identify the CRI, the court dismissed all of the indictments against defendant.

On appeal, the state argues that the court erred in finding that the statutory criteria for extinguishing the state's privilege to refuse to disclose the identity of the CRI had been met. In this case, defendant moved for disclosure of the CRI's identity because he assumed "that Mr. Webster intend[ed] to minimize his role in this transaction and portray [defendant] as the primary dealer of methamphetamine and these statements are obviously useful, if not vitally necessary, for purposes of cross-examining and impeaching the state's key witness against [d]efendant." The state contends that defendant merely assumed that Webster would contradict his earlier statements to the CRI regarding Webster's status as the "kingpin" of the conspiracy. Furthermore, it argues, regardless of how Webster might testify, the issue of who led the conspiracy is a collateral matter and extrinsic evidence cannot be introduced to impeach a witness on a collateral matter. Defendant responds that the nature of the relationship between defendant and Webster "is vitally important to any determination of guilt or innocence" and

that, because the CRI can testify that Webster said Webster was the boss, the state must identify the CRI.

Whether the identity of a CRI must be disclosed is governed by OEC 510,[1] which provides that the state has the privilege to refuse to disclose the identity of an informant. OEC 510(2). That privilege can be extinguished only if the three criteria specified in OEC 510(4)(b) are satisfied and the court finds that a reasonable probability exists that the informant will be able to give necessary testimony. First, it must appear from evidence in the case or another showing by defendant, that the informant "may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case." OEC 510(4)(b). Second, the state must invoke the privilege. Third, the court must give the state "an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony." *Id.* If these criteria are satisfied and the court

---

[1] OEC 510 provides, in part:

"(2) A unit of government has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer or member of a legislative committee or its staff conducting an investigation.

"(3) The privilege created by this section may be claimed by an appropriate representative of the unit of government if the information was furnished to an officer thereof.

"(4) No privilege exists under this section:

"(a) If the identity of the informer or the informer's interest in the subject matter of the communication has been disclosed to those who would have cause to resent the communication by a holder of the privilege or by the informer's own action, or if the informer appears as a witness for the unit of government.

"(b) If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of the issue of guilt or innocence in a criminal case * * *, and the unit of government invokes the privilege, and the judge gives the unit of government an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but the judge may direct that testimony be taken if the judge finds that the matter cannot be resolved satisfactorily upon affidavit. If the judge finds that there is a reasonable probability that the informer can give the testimony, and the unit of government elects not to disclose identity of the informer, the judge on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the judge may do so on the judge's own motion. * * * Evidence submitted to the judge shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the unit of government."

finds that, with reasonable probability, the informant can give necessary testimony, then the state must choose whether it will disclose the informant's identity. *Id.* If the state elects not to disclose, the charges must be dismissed. *Id.*

In deciding that the identity of the state's informant must be disclosed, the trial court found that the CRI, with reasonable probability, would be able to give testimony on some issue necessary to the fair determination of defendant's guilt or innocence. In order to make that determination, Webster's testimony had to be before the court.

However, the record contains no evidence or showing of what Webster's testimony would be. Defendant's speculation that Webster would testify that defendant was the "kingpin" of the drug operation, which would contradict Webster's prior statement to the CRI, was merely that: speculation. Without some evidence of what Webster's testimony would be, the court had no factual basis for finding that the CRI's identity needed to be disclosed. Under these circumstances, the trial court abused its discretion in dismissing the indictments against defendant.

Reversed and remanded.